1

2

3

4

5

6

7

8

9                      **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

11

12   STEPHANIE GODOY,                 )    Case No. CV 14-04093-AS
                                      )
13                  Plaintiff,        )    **MEMORANDUM OPINION AND**
                                      )
14        v.                          )    **ORDER OF REMAND**
                                      )
15   CAROLYN W. COLVIN, Acting        )
     Commissioner of Social          )
16   Security,                        )
                                      )
17                  Defendant.        )
                                      )
18   ─────────────────────────────── )

19
        Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED
20   that this matter is remanded for further administrative action
21   consistent with this Opinion.

22
                              **PROCEEDINGS**
23

24
        On May 28, 2014, Plaintiff filed a Complaint seeking review of the
25   denial of her applications for Disability Insurance Benefits and
26   Supplemental Security Income. (Docket Entry No. 1).  The parties have
27   consented to proceed before the undersigned United States Magistrate
28   Judge. (Docket Entry Nos. 9-10).  On October 14, 2014, Defendant filed
     an Answer along with the Administrative Record ("AR"). (Docket Entry

Nos. 12-13).   The parties filed a Joint Position Statement ("Joint Stip.") on December 30, 2014, setting forth their respective positions regarding Plaintiff's claims.   (Docket Entry No. 15).

The Court has taken this matter under submission without oral argument.   See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed June 3, 2014 (Docket Entry No. 5).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On March 16, 2011, Plaintiff, formerly employed as a traffic supervisor for a customs house brokerage (see AR 35-36, 165), filed applications for Disability Insurance Benefits and for Social Security Income, both alleging a disability since August 15, 2010. (AR 137-42).

On October 14, 2010, the Administrative Law Judge, Robert S. Eisman, heard testimony from Plaintiff and vocational expert Korin Porter.  (AR 31-64).  On September 28, 2012, the ALJ issued a decision denying Plaintiff's application.  (AR 17-25).   After determining that Plaintiff had severe impairments -- "history of Grave's disease, status post radioactive iodine treatment, transitioned to hypothyroidism with hormone replacement therapy; drug induced nephropathy; and obesity" (AR 19-20) --, the ALJ found that Plaintiff had the residual functional capacity[1] ("RFC") to perform light work[2] in that she can exert up to 20 pounds of force occasionally and/or up to 10 pounds frequently and/or a negligible amount of force constantly to move objects, with the following limitations: standing/walking up to 6 hours in an 8-hour workday with normal breaks; no climbing ladders, ropes or scaffolds; no

---

[1]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

[2]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

more than occasional climbing of ramps or stairs; and no more than frequent stooping, kneeling, crouching or crawling.  (AR 20-23). Finding that Plaintiff could perform her past relevant work as a traffic manager the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23-24).

Plaintiff requested that the Appeal's Council review the ALJ's Decision. (AR 10).  The request was denied on March 31, 2014.  (AR 1-4).   The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) assess the opinions/findings of Plaintiff's treating and examining physicians; and (2) evaluate Plaitniff's credibility and/or subjective symptoms. (See Joint Stip. at 4-8, 10-15, 19-21).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration.   Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first claim of error.

**A.   The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding Plaintiff not fully credible. (See Joint Stip. at 12-15, 19-21).   Defendant asserts that the ALJ provided

specific reasons for finding Plaintiff not fully credible. (See Joint Stip. at 15-19).

Plaintiff made the following statements in an Exertion Questionnaire dated June 7, 2011: (1) she lived in a house with family; (2) she is not able to sleep at night due to leg cramps; (3) she has to sit down after 5 minutes of moving around in the morning because of soreness; (4) she cannot stand for very long; her legs even cramp when she sits down; (5) her daily activities include cleaning the house -- making the bed makes her tired and makes her arms and leg sore; vacuuming makes her tired, makes her arms hurt, and gives her headaches; and washing dishes (makes her legs sore); (6) she is able to walk up and down the block twice (makes her sore); (7) she does not climb stairs; (8) she lifts cooking pans at dinner every day; (9) she does not carry heavy objects because they make her sore and make her lose circulation in her hands; (10) she goes to the market every other day; (11) she makes the beds, cleans the bathroom and vacuums, but takes breaks between chores; (12) she drives an automatic car to local places, unless she is shaking too much; (13) she begins yard work but is unable to complete it because of soreness in her legs and arms (her husband completes it); (14) her disability causes her to do chores very slowly and sometimes she is not able to complete them because of shaking; (15) she sleeps 4 to 5 hours at nap; she is required to take naps every day; (16) she takes Methimazole 2 times a day (but used to take it 3 times a day) and Atenolol twice a day; and (17) writing down answers to questions makes her nervous and causes her whole body to shake and gives her bad haeadaches.  (AR 158-60).

At the hearing, Plaintiff testified she has a husband and two grown children.  She has a driver's license without any restrictions.  She has not worked since August 2010.   She last tried looking for work ("[a]nything that's available") in 2011.   She was laid off from work in 2008 because her company was bought out. (See AR 33-34, 36-37).

1   Her traffic manager job involved issuing paperwork to truckers
2   going to the harbor to pick up containers.  She did not lift anything
3   more than a telephone.  (See AR 35-36).

4
5   She is 5'5" tall and weighs 220.  She had significant weight gain
6   due to her hormones and medication.  She is  is taking a thyroid hormone
7   replacement (she is seeing an endocrinologist, Dr. Gastilum).  Last year
8   she had radioactive iodine treatment.  She has seen a nephrologist (Dr.
9   Darwish) for her kidneys only once.  She has not had a thyroidectomy.
    (See AR 37-39, 43).

10
11   She was and still is diagnosed with Graves' disease.  (See AR 38).

12   Her legs and muscles affect her ability to work the most.  She is
13   in a lot of pain.  When she sits down, she feels fidgety and has to
14   stand.  (While she was talking during the hearing, she was fidgeting and
15   her toes were tingling.  She felt okay because she was able to stretch
16   her legs there.  At a desk job, after about 20 minutes, she would have
17   to get up and walk around for a while).   When she stands too long, she
18   has to sit down.  Her doctor told her the cause of her leg pain was
19   Graves' disease, and the medicines for her hormone replacement therapy
20   (Levothyroxine, Tenilow).   For the past 6 months, her doctor has
21   prescribed Vicodin (one every 6 hours), which has given her relief.  Her
22   leg pain causes her not to sleep a full night (she is taking Vicodin for
23   that).  She takes two naps a day every day (she elevates her knees, so
24   that her legs are elevated above her heart).  A foot stool under a desk
     would not help her.   She gets tired with her medicines, especially
     Vicodin.   (See AR 39-42, 49-52).

25
26   Tremors in her right and left arms also affect her ability to work.
27   That is under control, to some degree, with the medications.  She starts
28   to shake with tremors when she uses the computer (which is why she
     stopped using it).  (See AR 42, 52-53).

The issues with her legs and arms has mostly affected her physical activities, such as walking for exercise, moving around.  (See AR 43).

She has other issues.  She perspires a lot, which is caused by her hormones (she is not taking any medication for that).  She has swelling around her eyes.  She has swelling around her hands and ankles, which is common for Graves' diseases.  The swelling subsides in the morning after she moves around a little bit.  She has headaches for which she takes the Vicodin (which helps relieve them).  She has carpal tunnel in her right hand.    (See AR 43-45).

She does not smoke, and she drinks a glass of wine occasionally. (See AR 49).

For daily activities, she helps her daughter with chores, she tries to vacuum (but fatigue causes her to take breaks), she helps with the laundry (she sets up everything, but others carry things to the washing machine), she goes shopping with her husband, she cooks with the help of others (she has to sit down a lot when she cuts things).  She does not do any more yard work, and her daughter takes care of their dog.  With respect to hobbies, she used to play softball with her daughter (but her daughter no longer plays).  She reads and watches television.  She no longer spends time on the computer, or goes out to the movies or other activities.  (See AR 46-49).

In the section concerning Plaintiff's RFC, the ALJ stated, "The claimant's testimony from the prior hearing, as well as the summary, weighing and analysis of the function reports and pain questionnaire's [sic] submitted in connection with the claimant's application, are included by reference herein[.]" (AR 16).

After summarizing Plaintiff's testimony at the administrative hearing concerning her symptoms and limitations, as well as the medical

evidence in the record (see AR 20-22), the ALJ assessed Plaintiff's credibility as follows:

> The undersigned finds the claimant not fully credible. The claimant testified to significant limitations sitting and walking due to fidgetness, difficulty sleeping due to restless legs, and continued tremor in her arms; however, the medical record notes that the claimant has not demonstrated motor dysfunction or other significant musculoskeletal symptoms since radioactive iodine treatment in July 2011 (Exs. 5F/10; 7F/6, 15, 19; 6F/11), which diminishes her credibility. Additionally, the undersigned did not observe any tremors or shaking of the upper extremities at the hearing. Moreover, her claim of fatigue from medication is not supported by the record, which further diminishes her credibility. The undersigned, however, has accommodated the claimant's complaints of arthralgia and myalgia in the above residual functional capacity, which is supported by the record.

(AR 22).

The ALJ then concluded: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."  (AR 23).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a

claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 462013 * 5 (August 5, 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for his finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, the lack of objective medical evidence for Plaintiff's symptoms and limitations -- cannot, by itself, support the credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Third, the ALJ's discrediting of Plaintiff's testimony because he "did not observe any tremors or shaking of the upper extremities at the hearing" was improper. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir.

1989) ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain."); <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985) (condemning an ALJ's reliance of a plaintiff at a hearing as "'sit and squirm' jurisprudence"). At the hearing, Plaintiff testified she shakes with tremors when she uses the computer. (<u>See</u> AR 53). Moreover, Plaintiff apparently suffered upper extremity tremors when her hands were extended. (<u>See</u> AR 207-08 [During a visit on June 4, 2010, Dr. Mendez noted that "[a] motor exam demonstrated dysfunction FINE TO MOD TREMOR NOTED IN HANDS WHEN UE IN EXTENSION."]). Since the record is unclear as to the position of Plaintiff's upper extremities during the hearing, the ALJ's reliance on his observation of Plaintiff at the hearing was not a sufficient basis for discrediting her testimony.

Fourth, the ALJ's statement that Plaintiff's testimony was not credible because her "claim of fatigue from medication is not supported by the record" was also improper because, as stated above, the absence of objective medical evidence for Plaintiff's symptoms and limitations cannot, by itself, support the adverse credibility finding. Moreover, although Plaintiff did testify that she gets tired when she takes her medicines, especially Vicodin (<u>see</u> AR 52), it does not appear that Plaintiff was truly alleging a claim of fatigue from medication. Rather, Plaintiff's claim of fatigue was predominantly based on her physical issues and her problems with sleep. (<u>See</u> AR 39-47, 50-52, 158-60).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise

1   this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179

2   ("[T]he decision of whether to remand for further proceedings turns upon

3   the likely utility of such proceedings.").  However, where, as here, the

4   circumstances of the case suggest that further administrative review

5   could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod</u>

6   <u>v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>,

    211 F.3d at 1179-81.

7

8       Since the ALJ failed to properly assess Plaintiff's credibility,

9   remand is appropriate.  Because outstanding issues must be resolved

10  before a determination of disability can be made, and "when the record

11  as a whole creates serious doubt as to whether the [Plaintiff] is, in

12  fact, disabled within the meaning of the Social Security Act," further

13  administrative proceedings would serve a useful purpose and remedy

    defects.  <u>Burrell   v.   Colvin</u>,   775   F.3d   1133,   1141   (9th   Cir.

14  2014)(citations omitted).[3]

15  ///

16  ///

    ///

17

18

19

20

21

22

23

24      [3]   The Court has not reached any other issue raised by Plaintiff
    except insofar as to determine that reversal with a directive for the
25  immediate payment of benefits would not be appropriate at this time.
    "[E]valuation of the record as a whole creates serious doubt that
26  Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995,
    1021 (2014).  Accordingly, the Court declines to rule on Plaintiff's
27  claim regarding the ALJ's assessment of the opinions/findings of
    Plaintiff's treating and examining physicians (<u>see</u> Joint Stip. at 4-8,
28  10-12).   Because  this  matter  is  being  remanded  for  further
    consideration, this issue should also be considered on remand.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 11, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

11